Ronald E. Coleman, J.
On an appeal to the Appellate Division, Fourth Judicial Department, from a judgment entered on our decision dated April 29,1965, that court remitted the matter to us for a new trial only on the question of consequential damages to claimants’ restaurant property located at the corner of Delaware and Bonnet Avenues. (Sukiennik v. State of New York, 26 A D 2d 769.)
While the State only appropriated 650.34± square feet, the fact that the appropriation was in fee without the right of access across the entire frontage of claimants’ property on Delaware Avenue has caused substantial damages to their remaining property. As a result Bonnet Avenue became a dead-end street at Delaware Avenue and the State erected a guardrail which now precludes direct access to their property from Delaware Avenue. In our prior decision we set forth the facts then known and here repeat only what we consider necessary to supplement that decision.
When we viewed the property at the time of the first trial, the State had not completed its work. Since that time and by July 1,1965 the work was completed and the guardrail erected across the front of claimants’ property. It now appears that the guardrail was not called for in the original drawings for the work. Following the closing of Bonnet Avenue, a State engineer testified that cars using Bonnet Avenue were observed driving around *150 the barrier at Delaware Avenue by using claimants’ parking area in front of the restaurant to enter upon or leave Delaware Avenue. This was considered a potential danger and in order to prevent automobiles using Bonnet Avenue in this manner, the guardrail was placed in front of claimants’ property. There appears to have been no other reason for the guardrail and the condition which the State wished to correct by erecting the guardrail could have been corrected by closing off Bonnet Avenue at a point where the new street constructed by the State between Bonnet and Mallory Avenues intersected Bonnet Avenue.
The access roád in front of claimants’ property leading to the expressway was on a long curve. It was shown that it was good engineering practice to construct such an entrance at a like location on a curve with a shorter radius so as to allow entrance to an adjoining property on a street comparable to Delaware Avenue. No reason was given why the same was not done at the claimants’ property.
Following the appropriation, when automobiles are parked on both sides of Bonnet Avenue next to claimants’ property, only one automobile can pass between the automobiles so parked. Following the commencement of the work claimants entered into a month to month agreement with the owner of a garage property adjacent to their property for the privilege of using the area in front of his garage for parking after 7:00 p.m. in the evening. The rental was and still is $150 a month and the agreement can be terminated on 30 days’ notice. As this agreement has been and still is in effect, we do not know now what the effect on claimants’ business would be if the agreement was terminated.
Claimants are left with an entrance to their property by Mallory Avenue and the connecting street behind their property to Bonnet Avenue. Claimant testified that he had observed some automobiles leaving his premises using Bonnet Avenue and the connecting street to Mallory Avenue but that little use if any was made of this route to enter their property. The neighborhood adjacent to their restaurant consists of one block of houses on Bonnet Avenue and on Mallory Avenue. As a result their restaurant and bar business depended largely if not entirely on patrons who drive there or stop when driving by on Delaware Avenue. One not familiar with the location would drive past the restaurant without knowing how to enter it. The result is that claimants ’ property has been put in a cul-de-sac and it no longer has a reasonable means of access (Meloon Bronze Foundry v. State of New York, 10 A D 2d 905; Holmes v. State of New York, 279 App. Div. 489).
*151 Since the barrier along their property was placed July 1,1965 their gross business has dropped from $82,000 to $71,000 or $11,000 a year. This reduction took place while they were renting and using the parking area on the property of an adjacent owner by which cars could enter from Delaware Avenue and of course does not purport to show the loss in gross income if this parking lot was not available to them. From our view of the property we are convinced that if claimants only had access by the means furnished by the State that the premises could no longer be used as a restaurant. We are at a loss to understand and no reason was given why some means of access was not furnished to them from Delaware Avenue in a like manner as it was to the Krehbiel property on Niagara Falls Boulevard.
In South Buffalo By. Co. v. Kirkover (176 N. Y. 301, 306) the court said:' ‘ Considering the principle involved, unembarrassed by legal decisions, it is reasonable that where the state, in the exercise of the right of eminent domain, sees fit to take the property of the citizen without his consent, paying therefor such damages as are the result of the taking, the commissioners in the condemnation proceedings should not only be permitted but required to award the owner a sum that will fully indemnify him as to those proximate and consequential damages flowing from this act of sovereign power.”
This was the rule and we believe it still is. However, lately it has been urged upon us that recent decisions hold that some damages are not compensable. No one here disputed the fact that claimants’ remaining property was damaged as a result of the appropriation. Often, it must appear to the property owner that we are deciding what damages are not compensable rather than what are compensable under the constitutional mandate of just compensation. Overlooked also are Holmes v. State of New York (supra) and Meloon Bronze Foundry v. State of New York (supra) cited by the Appellate Division. Here the claimants have sustained a substantial and permanent impairment of the access to their property leaving them without any reasonably suitable means of access as a result of the use made of the property appropriated. The use made of the appropriated property was not reasonably adapted to benefit the traveling public. To now say that all or any part of the damages resulting therefrom is not compensable would amount to a confiscation of their property. (Idylbrook Farms v. State of New York, 49 Misc 2d 10, affd. 22 A D 2d 761.)
We now turn to the question of damages. The State, evidently on the theory that recent decisions support its position, offered *152 no further assistance to the court on the retrial. We still feel that the claimants ’ property sustained consequential damages for the reasons set forth in our original decision. The expert witness for the claimants testified that he still found the consequential damages to be $38,400. He frankly stated that it was difficult for him under these circumstances to break down in dollars and cents the various elements of consequential damages and in this we are inclined to agree. However, he attempted to do so.
Claimants contended that the reduction in value of their property following the appropriation was due to the reduction of the area remaining, loss of parking, the effects of the zoning ordinance resulting from the fact that the property no longer faces on Delaware Avenue and the lack of a suitable access, all of which downgraded the highest and best available use of the property following the appropriation. With this, we agree and so find. The consequential damages in the amount of $38,400 found by the claimants’ expert included an amount of $4,157 for loss of the lot on the northerly side of Bonnet Avenue. In this respect we do not agree and have allowed no amount in our consequential damages to the restaurant property by reason of the appropriation of the property on the northerly side of Bonnet Avenue. Of the remaining $34,243 in consequential damages found by him, $7,680 represents consequential damages due to the fact that the property no longer has a suitable means of access. The before value found by us was $111,572 which represented 15,786± square feet at $2 a square foot or $31,572 and $80,000 for land improvements, including the buildings, sign, blacktop driveway, walks, fencing and landscaping. We now find the after valúe to be $74,828.32 and the damages to be $36,743.68 of which $2,500.68 represents the direct'taking as set forth in our original decision and $34,243 in consequential damages. While we might have made a different allocation in respect to the various items of consequential damages than that made by the claimants’ appraiser, we may not substitute our own independent judgment for that of the experts. We can only say that regardless of how you itemize the consequential damages that it is our opinion after hearing the proof and viewing the property that claimants’ remaining property sustained consequential damages in the amount of $34,243.